JUMAR JONES,

              Plaintiff,

    v.                                 Case No. 16-cv-1687-pp

KELLI WEST, MICHELLE HAESE,
KELLY SALINAS, ALAN DEGROOT,
MICHAEL DONOVAN, and
SCOTT ECKSTEIN,

              Defendants.

---

## ORDER SCREENING PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 11), DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 13), DENYING PLAINTIFF'S MOTION FOR JUDGMENT (DKT. NO. 15), AND GRANTING MOTION FOR STATUS (DKT. NO. 16)

---

On February 28, 2017, the court gave the plaintiff an opportunity to file a second amended complaint. Dkt. No. 9. The court received the amended complaint on March 21, 2017. Dkt. No. 11. The law requires the court to screen complaints, including amended complaints, brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

1

"A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To proceed under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). I will give a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## A.    The Plaintiff's Allegations

In 2016, Ramadan started on June 7 and ended on July 6, see https://www.timeanddate.com/holidays/us (last visited on July 14, 2018). On April 14, 2016, the plaintiff learned from other inmates that a sign-up sheet to receive bagged meals during Ramadan had been posted in the chapel for a couple of weeks; the deadline to sign up was April 7, nearly two months prior to Ramadan. Dkt. No. 11 at ¶12.

The plaintiff sent defendant Chaplain Michael Donovan an interview/information request, stating,

> It is our understanding that this year's Ramadan deadline was April 7? If this is the case, there are numerous Muslim inmates who received no notice of Ramadan. If this is your policy not to issue timely notice, then you have imposed a 'substantial burden' and have put inmates who had wish[ed] to participate cannot [sic], because they can't afford the cost

of providing their own meals. Can you please explain why you didn't issue a[n] institution wide memo stating the start of Ramadan and the deadline to sign up for 'all' Muslim inmates? Thank you."

Id.

Donovan responded the next day, telling the plaintiff, "I was directed by management that I could post an announcement only in the chapel and library." Id. at ¶13. The plaintiff and another inmate spoke to Donovan later that day about not being added to the bagged meal list. Id. at ¶14. Donovan explained that there had been a change in policy about notification; all notifications for religious celebrations would be posted only in the chapel or library. Id. The plaintiff asked why religious notifications were being handled differently from other non-religious notifications. Id. Donovan stated that he did not know and he could not put the inmates on the bagged meal list. Id. Donovan instructed the inmates to write to defendant Michelle Haese at social services. Id.

That same day, the plaintiff sent a letter to Haese, asking her to add him to the bagged meal list for Ramadan. Id. at ¶15. The plaintiff explained that earlier in the year, Native American services had been posted. Id. He also observed that the policy seemed unfair because non-religious notices were still posted institution-wide and not all inmates attend the chapel or library regularly. Id.

The next day, on April 16, 2016, Haese responded to the plaintiff and denied his request to receive bagged meals during Ramadan. Id. at ¶16. She explained that in the past, Green Bay Correctional Institution (GBCI) had put

"congregate" meal date notifications on "institution Channel 8;" however, in 2016, the institution changed its policy, posting notification of multi-day religious meal accommodation and congregate meal dates only in the chapel, library and on restricted housing unit (RSHU) carts. Id. Haese explained that the new policy was in line with Department of Adult Institutions (DAI) policy and was comparable to the procedures of other maximum security sites. Id.

On April 19, 2016, the plaintiff sent a letter to defendant warden Scott Eckstein, explaining his communications with Donovan and Haese. Id. at ¶17. The plaintiff asked Eckstein to allow him and the other inmates who did not know about the sign-up deadline to participate. Id. According to the plaintiff, Eckstein did not respond to the letter, but he met with the plaintiff and two other inmates on April 22, 2016. Id. at ¶18.

Eckstein allegedly explained that he was new at GBCI, and he asked the inmates how the notification system worked and why Donovan and Haese had denied their requests to receive bagged meals during Ramadan. Id. The plaintiff explained the change in the notification policy as it related to religious observances. Id. Eckstein asked why the plaintiff did not attend chapel or go to the library. Id. The plaintiff explained that there was a lot of gang activity and fighting at the chapel services and his faith did not require that he attend services there. Id. He also explained that access to the library is very limited, with passes being handed out only once per week. Id. He stated that he has gone weeks without going to the library because of misplaced passes. Id. The plaintiff asked Eckstein why he had not responded to the plaintiff's letter;

Eckstein said he was busy and needed time. Id. The plaintiff asserts that Eckstein never responded. Id.

On April 24, 2016, the plaintiff sent an inmate complaint to defendant Alan DeGroot, asking that he be allowed to receive bagged meals during Ramadan. Id. at ¶19. The plaintiff explained that he did not know about the sign-up deadline because of the change in policy. Id. DeGroot denied the plaintiff's request, and explained that the new policy was consistent with the DAI policy requiring that notice be placed in the chapel and library and on the RSHU carts. Id. He said posting notifications on channel 8 is only a courtesy. Id. DeGroot also said that he could not make an exception to the sign-up deadline because it would be discriminatory if one group got an exception but others did not. Id. DeGroot told the plaintiff that inmates are responsible for knowing their faith practices. Id. In any event, DeGroot concluded, the plaintiff could still participate in the fast on his own through self-selection from the general menu or use of canteen products. Id.

On April 25, 2016, the plaintiff again spoke to Haese about her refusal to let him receive bagged meals during Ramadan. Id. at ¶20. He explained that the date for Ramadan changes every year. Id. Haese said she did not care, and good luck. Id. She said there would be no exceptions to the sign-up sheet deadline. Id. The plaintiff asked Haese for the name of her supervisor, so he could contact her. Id. Haese stated that she had already told defendant Kelli West about the situation at the institution and that the policy change had come from DAI. Id.

On May 14, 2016, the plaintiff filed another inmate complaint, which was reviewed by Kelly Salinas. Id. at ¶21. The plaintiff complained that the institution had changed its notification policy for religious observances without informing the inmates of the change, and that Haese refused to make an exception to the sign-up deadline even though he did not know about the deadline. Id. Salinas responded:

> The RPAC [Religious Practices Advisory Committee] Executive Committee will use a memo each year indic[a]ting the timeframe and deadlines for Mult[i]-Day Dietary accommodations. This information is posted at GBCI as noted in the ICE's recommendations. This is done for informational purposes to allow inmates to know sign[-up] deadlines for Ramadan sign up and its start/end date. The inmate failed to sign up for Ramadan, so his option is self-observe Ramadan. The institution's decision reasonably and appropriately addressed the issue raised by this inmate. On appeal, the inmate presented no information to warrant a recommendation overturning that decision. Thus, it is recommend[ed] this appeal be dismissed.

Id.

The plaintiff did not receive bagged meals during Ramadan. Id. at ¶19.

**B.     The Court's Analysis**

The plaintiff explains that, prior to 2016, GBCI posted all notices, including those about religious observances on "channel 8." In 2016, the institution changed that policy and began to post notices of religious observances only in the library, chapel and on the RSHU carts. The plaintiff states that the institution did not inform inmates about the change. In addition, because the plaintiff did not visit the library or chapel (and was not in restricted housing), he was unaware that the sign-up sheet to receive bagged

meals during Ramadan had been posted. Once the plaintiff learned about the sign-up sheet, he immediately requested to be added to it, but Donovan and Haese refused to add him even though he had missed the deadline by only about a week and Ramadan was nearly two months away.

Prisoners retain a right to free exercise of religion under the First Amendment, subject to legitimate penological demands of the state. Tarpley v. Allen County, Ind., 312 F.3d 895, 898 (7th Cir. 2002). In Conyers v. Abitz, 416 F.3d 580 (7th Cir. 2005), the Seventh Circuit Court of Appeals considered a situation in which an inmate was told he could not receive bagged meals during Ramadan because he had missed the sign-up deadline. Id. at 582-83. The court rejected the institution's "rigid and unsupported assumption that a sign-up deadline like the one imposed is a reasonable administrative requirement under any circumstances." Id. at 585. The court found that "convenience and notice to prison staff" did not justify "the rejection of [the plaintiff's] request to participate in the fast, especially since he missed the notification deadline by just four days and in fact alerted the defendants that he desired to participate in the Feast of Ramadan two days before it began." Id.

The plaintiff has alleged sufficient facts to allow him to proceed on a First Amendment claim against Haese, based on his allegations that she refused to add him to the bagged meal list shortly after the deadline even though the plaintiff explained that he did know that the sign-up sheet had been posted.

The plaintiff also has alleged sufficient facts to allow him to proceed against Eckstein, West, DeGroot and Salinas on failure-to-intervene claims,

based on his allegations that all of them knew about Haese's refusal to make an exception to the sign-up deadline and either approved, condoned, or turned a blind eye to her refusal to add him to the bagged meal list. See Perez v. Fenoglio, 792 F.3d 768, 781-82 (7th Cir. 2015) (holding that supervisory officials and grievance officials can be liable under §1983 if they fail to exercise their authority to intervene on a prisoner's behalf to rectify the situation.)

The court will not allow the plaintiff to proceed on a free-exercise claim against Donovan. "It is well established that for constitutional violations under § 1983 . . . a government official is only liable for his or her own misconduct." Perez, 792 F.3d at 781. The Court of Appeals for the Seventh Circuit has explained that "no prisoner is entitled to insist that one employee do another's job." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009).

The plaintiff states that he asked Donovan to add him to the bagged meal list, and Donovan said that he could not. Instead, Donovan directed the plaintiff to Haese, the person with the authority to make an exception to the deadline. Because Donovan did not have the authority to add the plaintiff to the bagged meal list after the deadline (or to order Haese to do so), he cannot be held liable for her decision.

The court will also allow the plaintiff to proceed on his allegation that Haese, Eckstein, West, DeGroot, Salinas and Donovan violated the First Amendment when they adhered to and enforced a DAI policy requiring that institutions provide notice of religious observances to inmates only in specific locations, rather than on channel 8, where all non-religious notices were given.

The Seventh Circuit has explained that, "In the prison context, a regulation that impinges on an inmate's constitutional rights, such as one imposing a 'substantial burden' on free exercise, may be justified if it is 'reasonably related to legitimate penological interests." Kaufman v. Pugh, 733 F.3d 692 (7th Cir. 2013) (citations omitted). Further, "the Establishment Clause may be violated even without a substantial burden on religious practice if the government favors one religion over another (or religion over nonreligion) without a legitimate secular reason for doing so." Id.

The plaintiff's assertions that the limited notice prevented him from learning about and participating in important religious observances is sufficient for him to proceed. In addition, because the plaintiff is challenging both the policy and the decision of those who enforced it, he may proceed against Haese, Eckstein, West, DeGroot, Salinas and Donovan[1] in both their individual and official capacities. See Hill v. Shelander, 924 F.2d 1370, 1372 (7th Cir. 1991) (explaining that an official-capacity suit is appropriate when a person is executing or implementing the official policy or custom of a government entity).

The court will not, however, allow the plaintiff to proceed on equal protection or due process claims based on these same allegations. As the Seventh Circuit has noted in similar circumstances, the plaintiff's First

---

[1] The plaintiff alleges that Donovan told him that management directed him to post the announcement only in the library and chapel. The plaintiff does not clarify whether Donovan had the authority or ability to post the announcement on channel 8; however, because the court must construe a *pro se* plaintiff's allegations broadly, the court will allow the plaintiff to proceed on this claim against Donovan.

Amendment claim will "gain nothing by attracting additional constitutional labels." Conyers, 416 F.3d at 586 (citing Graham v. Connor, 490 U.S. 386, 395 (1989) for the proposition that claims are to analyzed under the most explicit source of constitutional protection).

**C.    The Plaintiff's Motion for Sanctions and Motion for Judgment**

On June 22, 2017, the court ordered that the plaintiff could pay the remainder of the $350 filing fee from his release account. Dkt. No. 12. The court ordered the warden of GBCI to withdraw $328.02 from the plaintiff's release account and forward that sum to the clerk of court by July 31, 2017. Id.

On September 1, 2017, the plaintiff filed a motion for sanctions, dkt. no. 13, and, on January 10, 2018, the plaintiff filed a motion for judgment, dkt. no. 15, based on his assertions that the warden had failed follow the court's order.

Court staff contacted the business office at GBCI to find out why the remainder of the filing fee had not been withdrawn from the plaintiff's release account and forwarded to the court. The business office explained that the plaintiff did not follow the institution's policies regarding the disbursement of funds. Specifically, the plaintiff wrote two letters to the warden, telling him that the court had issued its order and demanding that the funds be taken out of his account. Dkt. No. 14-1. He did not, however, provide the business office with a copy of the court's order, a prepaid envelope, and a disbursement

10

request, which is what institution policy requires for the business office to process the payment.

The court will deny the plaintiff's motions. He must follow the institution's policies regarding disbursements. If he has additional questions regarding the policies, he should contact the institution's business office. The court reminds the plaintiff that, because he already paid an initial partial filing fee, the court granted his motion to proceed without prepayment of the filing fee, dkt. no. 9. That means that the fact that the court has not yet received the balance of the filing fee has not delayed the court's handling of the case.

**D.    Status Motion**

Finally, the plaintiff filed a motion asking this court to rule on his motion for sanctions, and to "move this case forward without undue delays, if possible." Dkt. No. 16. By way of this order, the court is granting that motion. The court acknowledges, with regret, that it has taken the court a very long time to screen the amended complaint and get this case moving. That is not because it has not received the balance of the filing fee. It is because of this court's backlog of cases. The delay is solely the court's fault; the court regrets that it has fallen behind, not only on this plaintiff's case, but on many others. This order should get the case moving again. The court apologizes to the plaintiff for the delays.

**E.    Conclusion**

The court **DENIES** the plaintiff's motion for sanctions. Dkt. No. 13.

The court **DENIES** the plaintiff's motion for judgment. Dkt. No. 15.

The court **GRANTS** the plaintiff's status motion; this order constitutes a status update. Dkt. No. 16.

The court **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's second amended complaint and this order are being electronically sent to the Wisconsin Department of Justice for service on defendants Kelli West, Michelle Haese, Kelly Salinas, Alan DeGroot, Michael Donovan and Scott Eckstein.

The court **ORDERS** that under the informal service agreement between the Wisconsin Department of Justice and this court, defendants Kelli West, Michelle Haese, Kelly Salinas, Alan DeGroot, Michael Donovan and Scott Eckstein shall file a responsive pleading to the second amended complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility; if the plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

The court advises the plaintiff that if he does not file documents or other required information by the deadlines the court sets, the court may dismiss his case for failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 17th day of July, 2018.

BY THE COURT:

_____

HON. PAMELA PEPPER
United States District Judge